IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

SANDY L. STROZIER,                    )
                                      )
        Plaintiff,                    )
                                      )
    v.                                )   CASE NO. 3:17-CV-853-WKW
                                      )            [WO]
THE CITY OF LANETT;                   )
KYLE MCCOY, individually and in       )
his official capacity as Mayor of the )
City of Lanett; JASON ABERNATHY,      )
individually and in his official capacity )
as Code Enforcement Officer of the    )
City of Lanett,                       )
                                      )
        Defendants.                   )

## MEMORANDUM OPINION AND ORDER

Plaintiff alleges that Defendants — The City of Lanett; its mayor, Kyle McCoy; and its code enforcement officer, Jason Abernathy — demolished the structure on his property without providing him constitutionally adequate notice in violation of the Due Process Clause of the Fourteenth Amendment. Before the court are Defendants' motion for summary judgment (Doc. # 20), and Plaintiff's response in opposition (Doc. # 22). Based on the lack of factual development on the pivotal issue of constitutional notice, Defendants have not met their burden of demonstrating that there is no genuine dispute of material fact and that they are entitled to judgment

as a matter of law.  Accordingly, Defendants' motion for summary judgment is due to be denied.

## I.   JURISDICTION AND VENUE

The court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.  Personal jurisdiction and venue are uncontested.

## II.   STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact.  *Id*.  A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor.  *Waddell v. Valley Forge Dental Assocs*., 276 F.3d 1275, 1279 (11th Cir. 2001).

## III. BACKGROUND

The sole issue is whether Defendants deprived Plaintiff of his procedural due process rights under the Fourteenth Amendment by denying him notice and the opportunity to be heard before demolishing a structure on property he owned in the City of Lanett, Alabama. The summary judgment facts on the issue of notice are sparse. As a result, the background that follows reads more like a recitation of what facts are not in the record, rather than what facts are in the record.

Plaintiff has owned property located at 614 South Sixth Avenue, in Lanett, Alabama, since 2005. (Doc. # 22-1, at 2 (Pl.'s Aff.).) Until the City of Lanett demolished it in January 2017, a home was on the property. It does not appear that Plaintiff ever lived in the home, at least not permanently, because he identifies his legal residences during this time period as being in Georgia. There is no evidence — one way or the other — whether anyone else ever lived in the home.

When Plaintiff purchased the property, the structure on the premises needed repairs. In 2006, Plaintiff obtained a building permit from the City of Lanett to make upgrades and took out a $40,000 loan for this purpose.[1] (Doc. # 20-1, at 2; Doc. # 22-1, at 2; stipulation a.) The summary judgment record leaves a gap in time of nearly a decade and is silent as to the type or extent of repairs Plaintiff made or

---

[1] To date, Plaintiff is repaying this loan to J.P. Morgan Chase, the mortgagee of record.

sought to make to the residence after taking out the loan.[2]  Fast forward from 2006

to 2015, and even assuming that Plaintiff made repairs during that time period, they

were not enough to sway the City of Lanett's determination that the structure on

Plaintiff's property was unsafe and a public nuisance.  The City thus commenced

steps to provide notice to Plaintiff to either remedy the unsafe conditions or demolish

the structure or risk that the City would demolish it.  Section 11-40-31 of the

Alabama Code sets out the notice procedures the City must follow.  Although notice

requirements in a state statute are not necessarily synonymous with those of due

process, setting out § 11-40-31's requirements here provides context for the City's

actions, as well as for some of the parties' arguments.  That statute provides:

> The term "appropriate municipal official" as used in this article shall
> mean any municipal building official or deputy and any other municipal
> official or municipal employee designated by the mayor or other chief
> executive officer of the municipality as the person to exercise the
> authority and perform the duties delegated by this article.  Whenever
> the appropriate municipal official of the municipality finds that any
> building, structure, part of building or structure, party wall, or
> foundation situated in the municipality is unsafe to the extent that it is
> a public nuisance, the official shall give the person or persons, firm,
> association, or corporation last assessing the property for state taxes and

---

[2] Plaintiff's counsel argued at the status conference on January 30, 2019, that his client had
amassed bills for repairs and for work to be performed on his property.  His argument suggests
that Plaintiff takes the position that the time, effort, and money he spent on repairs for the home is
materially relevant to a Fourteenth Amendment due process claim.  This suggestion is not well-
taken.  The extent of repairs might have been a defense to the City's nuisance action, but Plaintiff
has not shown how such repairs are relevant to the due process claim.  *See, e.g., Kraft v. City of
Mobile*, 588 F. App'x 867, 869 (11th Cir. 2014) (The plaintiff's "argument that his property was
not a nuisance is unavailing, because for a claim of a violation of procedural due process under
§ 1983, the City was not required to prove that the property was a nuisance.") (citing *Grayden v.
Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).

all mortgagees of record, by certified or registered mail to the address on file in the tax collector's or revenue commissioner's office, notice to remedy the unsafe or dangerous condition of the building or structure, or to demolish the same, within a reasonable time set out in the notice, which time shall not be less than 30 days or suffer the building or structure to be demolished by the municipality and the cost thereof assessed against the property. The mailing of the certified or registered mail notice, properly addressed and postage prepaid, shall constitute notice as required herein. Notice of the order, or a copy thereof, shall, within three days of the date of mailing, also be posted at or within three feet of an entrance to the building or structure. If there is no entrance, the notice may be posted at any location on the building or structure.

Ala. Code § 11-40-31.

In a letter dated October 14, 2015, Code Enforcement Officer Abernathy notified Plaintiff that the City of Lanett had found that the "dilapidated/burned structure" on his property was "unsafe and a public nuisance." (Doc. # 20-2, at 2.) The letter warned that, within 45 days, Plaintiff had to repair or demolish the structure or, alternatively, within 30 days, Plaintiff had to submit a "work plan to accomplish" the repair or demolition.[3] (Doc. # 20-2, at 2.) The letter was sent by certified mail, addressed to Plaintiff at the Decatur, Georgia address on file in the revenue commissioner's office. Plaintiff attests, though, that, in 2014, he had moved from Decatur to Midland, Georgia, and that he "did not receive" the letter by

---

[3] Contrary to Abernathy's attestation (Doc. # 20-1, at 3), the October 14, 2015 letter does not contain language that, if Plaintiff did not take the prescribed actions to repair or demolish the structure, he would "suffer the building or structure to be demolished by the municipality and the cost thereof assessed against the property" as required by § 11-40-31. (*See* Doc. # 20-2.) Whether the contents of the letter would have satisfied Defendants' due process obligations need not be decided, however, since the parties have stipulated that the letter was returned undeliverable (see below).

certified mail "or any other means."[4] (Doc. # 22-1, at 2–3.) Missing in the summary judgment record is a copy of the return-receipt card. However, the parties subsequently stipulated that the letter was returned to Defendants as "undeliverable."[5] (Parties' Stipulation d.)

Also, on October 14, 2015, Abernathy attests that a "Demolition Notice" was affixed to the structure on Plaintiff's property. (Doc. # 20-1, at 3.) But the summary judgment record does not reveal what the notice said. Defendants have submitted a blowup of only a small portion of the notice that shows a faded, handwritten notation of "10-14-15." (Doc. # 20-4, at 2.) The blowup captures only a few lines of incomplete text with cut-off words. From the limited words that can be made out, the Demolition Notice does not appear to be a copy of the October 14, 2015 letter that was mailed to Plaintiff.[6] The record also does not contain other potentially

---

[4] Plaintiff does not dispute Abernathy's attestation that the Decatur, Georgia address was the one on file in the revenue commissioner's office.

[5] After the close of the summary-judgment briefing period, the parties submitted stipulations of fact for inclusion in the court's pretrial order. Although the pretrial order has not been filed yet, the parties' stipulations, where pertinent, have been considered in this opinion.

[6] The court informed the parties at the status conference held on January 30, 2019, that at trial there would need to be evidence of what the notice said. On March 6, 2019, Defendants filed a supplemental affidavit from Abernathy, who set out the wording on the Demolition Notice affixed to Plaintiff's property. The evidentiary submission would have been helpful had it been timely. The motion for summary judgment has been under submission for several months; trial is set in less than a month; and Plaintiff has not had an opportunity to respond to this new evidentiary submission. The evidentiary submission, therefore, will not be considered for purposes of ruling on the present motion. Even if the evidence had been timely submitted and not disputed by Plaintiff, Defendants still would not have been entitled to summary judgment for the other reasons set out in this opinion.

salient facts on the issue of the posted notice. There is no evidence as to the length of time the notice remained posted on the property. There also is no evidence whether Plaintiff saw the Demolition Notice or whether anyone else saw the notice and conveyed its contents to Plaintiff. Plaintiff has not been deposed, and both Defendants' evidence and Plaintiff's affidavit are silent on these points. Although at the January 30, 2019 status conference, counsel for Plaintiff indicated that Plaintiff never saw the posted notice, there is no evidence to that effect.

Two months after the posting of notice on Plaintiff's property, Defendant Abernathy signed a second letter, dated December 28, 2015, again addressed to Plaintiff at the Decatur, Georgia address. The letter informed Plaintiff that the City previously had "contacted" him concerning the dilapidated property, that "[t]he time allowed for [Plaintiff] to contact [Abernathy] about this matter or rehabilitate this property has expired," and this notice was Plaintiff's "final notice that the property is condemned and must be abated." (Doc. # 20-5, at 2.) This letter also was returned as "undeliverable." (Parties' Stipulation d.) The return-receipt card is not signed, and the certified mail envelope contains a forwarding address in Lithonia, Georgia, and a notation to "return to sender." (Doc. # 22-1, at 6–8 (copy of the unsigned return-receipt card marked "return to sender").) Additionally, Plaintiff attests that he did not receive notice of the December 2015 letter by "any other means." (Doc. # 22-1, at 3, ¶ 5.) Hence, the few facts that are clear are that Plaintiff did not receive

the certified-mail letters, dated October 14, 2015, and December 28, 2015, and, that, based on the return-receipt cards, Defendants were on notice of the failed delivery attempts.

On January 4, 2016, at a regular meeting of the city council, a motion to adopt a resolution declaring Plaintiff's property a public nuisance was "unanimously carried." (Doc. # 22-1, at 10 (Ex. F.).) The resolution declared that Plaintiff had not responded to the code enforcement officer's notice of the City's finding that his property was a public nuisance, and it authorized the City's code enforcement officer to "abate the nuisance by demolishing and removing the structure from the property and cleaning same." (Doc. # 22-1, at 11 (Ex. F).) But there is only an unsigned copy of the resolution in the record, and the parties stipulate that Defendants demolished the structure on Plaintiff's property "prior to the city council approving the demolition." (Parties' Stipulation g.) Plaintiff was not present at this hearing, and there is no evidence whether Plaintiff received notice that the fate of his property would be decided at this meeting.

For reasons not explained in the record, the City did not take immediate action to demolish the home on Plaintiff's property. The record reveals, though, that around November 2016, more than eleven months after the foregoing city council meeting, the City of Lanett disconnected the electrical services to the structure on Plaintiff's property. That month, when Plaintiff did not receive an electric bill, he

"contacted the Lanett City utilities and learned that electrical service had been turn off because [his] residence had been condemned."  (Doc. # 22-1, at 3.)

The next month, around December 7, 2016, Plaintiff spoke to Abernathy. Abernathy informed Plaintiff that he had to make the needed repairs by January 1, 2017, or the house would be razed.  (Doc. # 22-1, at 3; Doc. # 20-1, at 4).)  The same month, Defendant Abernathy sent a letter, dated December 27, 2016, addressed to the North Carolina Banking Corporation.  The letter stated:

> The City of Lanett Code Enforcement Officer has contacted Sandy Strozier previously in reference to a dilapidated property that according to our records JP Morgan Chase holds the mortgage on . . . .  The time allowed for rehabilitation of this property has expired.  Consider this your final notice that the property is condemned and must be abated.

(Doc. # 22-1, at 13.)  This letter, like each letter mailed to Plaintiff, was returned to Defendants as "undeliverable."  (Parties' Stipulation e.)  The return certified-mail envelope contains the following computerized notation:  "Return to sender[;] not deliverable as addressed[;] unable to forward."  (Doc. # 22-1, at 14.)  Notably, the parties have not indicated the date on which the notice was returned, and the court cannot ascertain that date from the copy of the return certified-mail envelope in the record.  It is undisputed, though, that the letter is dated eight days prior to the date the City demolished the home.

Around December 28, 2016, Plaintiff hired an individual — presumably an electrical company — to make repairs.  But the City still refused to restore Plaintiff's

electrical power on the basis that Abernathy "had instructed the utility department not to turn the power on." (Doc. # 22-1, at 4.) In a subsequent call, Abernathy informed Plaintiff that "it was too late and that [Plaintiff] had not done enough to stop the destruction." (*Id.*) Abernathy claims Plaintiff failed to make the necessary repairs before January 1, 2017. (Doc. # 20-1, at 4.)

On January 3, 2017, Plaintiff faxed a letter to the mayor's office. In the undated letter, Plaintiff requested that the City "cease and desist with the destruction of his property" and informed the City that he had "not received any notice or written correspondence as to why or how [his] home ha[d] been condemned." (Doc. # 22-1, at 16 (Ex. J).) But Plaintiff's fax went unanswered, and Plaintiff's property was razed on January 4, 2017. (Doc. # 20, at 3.) In addition to faxing the letter, Plaintiff delivered it by certified mail. But the letter arrived too late at the mayor's office. The return-receipt card on the certified mail reflects that the mayor received and signed for the letter the day after Plaintiff's property was demolished. (Doc. # 22-1, at 17 (Ex. K).)

Plaintiff filed this lawsuit on December 15, 2017. Plaintiff's eight federal claims — which are puzzlingly redundant — allege that Defendants deprived him of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution by (1) sending notices "with knowledge that plaintiff would not receive same" (Claims 1 and 2); and (2) by "razing the residence" after

Plaintiff objected and "prior to the lapse of 30 days from defendant[s' attempted] December 27, 2016 notice" to JP Morgan Chase (Claims 3, 4, 5, 6, 7, 8).[7] Plaintiff sues the individual Defendants in their individual and official capacities. He seeks a declaratory judgment, compensatory and incidental damages "as would put him in the economic position he would have been in but for acts complained of [in the complaint]," and punitive damages. (Doc. # 1, at 6.)

## IV. DISCUSSION

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A claim under 42 U.S.C. "§ 1983 . . . alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process."[8] *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). The first and second elements are not at issue. When the City demolished the structure on Plaintiff's property, the City deprived Plaintiff of his

---

[7] Counts 7 and 8 add language that Defendants' actions were "willful and intentional." (Doc. # 1, at ¶¶ 23, 24.)

[8] "Section 1983 provides a remedial device to enforce rights under the United States Constitution and federal law." *Farley v. Phila. Hous. Auth.*, 102 F.3d 697, 702 (3d Cir. 1996). Although Plaintiff does not plead 42 U.S.C. § 1983 as the statutory vehicle for enforcement of his due process claim, his failure to do so is not fatal to his claims. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) (holding that "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim").

property.  *See Ellis v. City of Montgomery*, 460 F. Supp. 2d 1301, 1304 (M.D. Ala. 2006) ("It is indisputable that real property is protected by the due process clause and that for the government to demolish one's property is to deprive him of it.").  At issue is the third element.

Constitutionally adequate process under the Due Process Clause "requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'"  *Jones v. Flowers*, 547 U.S. 220, 223 (2006) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).  In cases involving real property, due process "does not require that a property owner receive actual notice before the government may take his property."  *Id.* at 226.  Rather, due process mandates only that the property owner receive "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Id.* (quoting *Mullane*, 339 U.S. at 314).  It is not surprising then that "the notice required will vary with circumstances and conditions."  *Id.* at 227 (citation and internal quotation marks omitted).

The circumstance at issue in *Flowers* is relevant here.  In *Flowers*, the home owner was delinquent on his property taxes.  A state land commissioner sent a letter notifying the owner of his tax delinquency and his right to redeem the property.  The letter was sent by certified mail to the owner at the property's address, but

unbeknownst to the commissioner, the owner had moved out of the residence after he and his wife separated. The letter was returned "unclaimed." *Id.* at 224. Two years later, the commissioner sent a second letter to the same address notifying the owner of an impending tax sale. It also was returned "unclaimed." *Id.*

The Supreme Court held that, "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.* at 225. What is reasonable requires the government "to consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case." *Id.* at 230. In *Flowers*, the Court held that the property owner was denied due process because the commissioner did not take any further reasonable, practicable steps to notify the homeowner of the tax sale after learning that the certified-mail letters were returned unclaimed. *Id.* at 234–35. The Court reiterated that, "when notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 229 (quoting *Mullane*, 339 U.S. at 315). The Court deemed it unreasonable that a commissioner who truly desired to notify a real property owner of an impending tax sale "would do nothing when a certified letter sent to the owner is returned unclaimed." *Id.* The Court further held that the property owner's failure to comply with his statutory obligation

to update his mailing address for notice purposes did not relieve the commissioner of his obligation to provide constitutionally adequate notice. *Id.* at 232.

Although it declined to dictate to the state government precisely what steps it must take to comply with the Due Process Clause's notice requirement, the Court illustrated some methods that the commissioner could have taken to increase the likelihood that the owner would have received notice of the tax sale. It suggested that, on the facts of its case, a reasonable follow up measure to provide notice to the property owner "would have been to post notice on the front door" of the home to be forfeited. *See Flowers*, 547 U.S. at 235. Posting notice on the front door "would increase the likelihood that the owner would be notified that he was about to lose his property." *Id.* The Court observed that it had previously recognized that "posting notice on real property is 'a singularly appropriate and effective way of ensuring that a person . . . is actually apprised of proceedings against him.'" *Id.* at 236 (quoting *Greene v. Lindsey*, 456 U.S. 444, 451 (1982)). The commissioner also could have resent the letter by regular mail to obviate the signature requirement or sent the letter to the house by certified or regular mail addressed to the occupant of the home. *Id.* at 234–35. The Supreme Court did not go as far to require the commissioner to search phone or governmental records for the property owner's new address, reasoning that such steps would unnecessarily burden the state. *Id.* at 234–35. Because the governmental entity's tax-lien sale of the home in *Flowers* and the

City's demolition of the structure on Plaintiff's property both involved the use of the government's police powers to alter property interests of private individuals, the court finds the *Flowers* decision provides a fitting analogy here.

As in *Flowers*, Defendants sent two notices to Plaintiff by certified mail, and each was returned undeliverable. The City, like the commissioner in *Flowers*, was aware that the intended recipient did not receive the mailed notices. Under *Flowers*, these facts do not bode well for Defendants' summary judgment motion. However, in *Flowers*, the commissioner took no other steps to try to provide notice to the taxpayer prior to selling the property to discharge the tax debt. Here, the City also posted a notice on the structure on Plaintiff's property on October 14, 2015. The issue is this: Whether, where the certified-mail letters to Plaintiff were returned to Defendants as undeliverable, posting the notice on the structure on Plaintiff's property was an "additional reasonable step" satisfying Defendants' obligations under the Due Process Clause to provide Plaintiff notice of the impending demolition of the structure on Plaintiff's property. *Id.* at 225. Summary judgment is not appropriate on this issue for two principal reasons.

First, for starters, to comport with due process, "[t]he notice must be of such nature as reasonably to convey the required information." *Mullane*, 339 U.S. at 314. As set out earlier, the content of the notice is not part of the summary judgment record, thus, leaving an evidentiary void as to what information the notice conveyed.

But, even if the content of the notice were part of this record, Defendants still would not be entitled to summary judgment for the second reason.

Second, and more importantly, in *Flowers*, it was undisputed that, even though the owner had moved out, someone was living in the home. The fact that the home was occupied was significant. The *Flowers* Court explained that, even where the owner has moved, "post[ing] notice on the front door" of the home to be sold in the tax sale "would increase the likelihood that *any occupants* would alert the owner, if only because an ownership change could affect their own occupancy." 547 U.S. at 222 (emphasis added); *see also Greene*, 456 U.S. at 452 n.6 (similarly noting that "where the State has reason to believe the premises to be occupied or under the charge of a caretaker, notice posted on the premises, if sufficiently apparent, is . . . likely to come to the attention of the occupants or the caretaker").

With important property interests at stake, the court finds that the evidentiary record is too undeveloped as to what information Defendants knew about the home's occupancy to resolve on summary judgment whether the posting alone provided Plaintiff with constitutionally adequate notice that the structure would be demolished. The following illustrates some of the evidentiary holes. Did Defendants know whether anyone lived in the home during the time period of the posting? If Plaintiff or a tenant lived in the home on Plaintiff's property at any time during the notice's posting, there is no such evidence in the record. The inference

is, based on the condition of the home, that there was not an occupant. (*See, e.g.,* Abernathy's Aff. at 3 (attesting that Plaintiff was informed by an unidentified city employee that the "AC unit had been taken apart and bare wires were exposed" and that "the weather head had fallen from the house").) But that inference must be gleaned from hearsay, such as the statement in Abernathy's affidavit. Hearsay is not proper evidence on summary judgment, and there is nothing indicating that Abernathy's attestation (which is based on a statement of an unknown city employee) "will lead to admissible evidence." *Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir.), *amended on reh'g in part on other grounds*, 102 F.3d 1118 (11th Cir. 1996) (holding that the plaintiff could not "use inadmissible hearsay to defeat summary judgment when that hearsay will not be reducible to admissible form at trial"). Relatedly, was the condition of the home such that it would have been apparent to Defendants either that the home was or was not occupied? If the home was vacant, did Defendants know whether anyone checked on the property from time to time? If there was a caretaker or other individual checking on the home, there is no such evidence in the record. It seems that Defendants could have easily clarified these ambiguities as to the home's occupancy.

In sum, whether Defendants' posting notice on Plaintiff's property of the impending demolition is constitutionally adequate is dependent on the

"circumstances and conditions." *Flowers*, 547 U.S. at 227 (citation and internal quotation marks omitted). Those circumstances and conditions are missing here.

Defendants' other arguments that Plaintiff received constitutionally adequate notice also cannot carry the day. Defendants argue that they complied with the state notice requirements, *see* Alabama Code § 11-40-31, by sending notices by certified mail to Plaintiff to the address on file with the revenue commissioner. Defendants hang their hat on the statute's provision providing that "[t]he mailing of the certified or registered mail notice, properly addressed and postage prepaid, shall constitute notice as required herein." Ala. Code § 11-40-31. Defendants argue that "[t]here is nothing in § 11-40-31 that requires that the plaintiff actually receive the certified letter." (Doc. # 20, at 9.) The *Flowers* decision forecloses this argument. Even if it is assumed that the state "statutory scheme [here, § 11-40-31] is reasonably calculated to provide notice *in the ordinary case*," 547 U.S. at 230 (emphasis added), this is not an ordinary case because Defendants learned "prior to the taking that [their] attempt at notice ha[d] failed." *Id.* at 227. Regardless whether the certified mailings to Plaintiff satisfied the letter of state law, when the certified mailings were returned to Defendants as "undeliverable," the Supreme Court's decision in *Flowers* establishes that the Due Process Clause required Defendants to "take additional reasonable steps to attempt to provide notice to the property owner before [demolishing] his property, if it [was] practicable to do so." *Id.* at 225; *see also*

18

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432 (1982) ("[B]ecause minimum procedural requirements are a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action.") (cleaned up).

There is yet another flaw in Defendants' argument that they complied with the requirements set out in § 11-40-31. The argument ignores that the certified-mail letter to the mortgagee of record was dated a mere eight days prior to the City demolishing the structure on Plaintiff's property and was returned as undeliverable. *See* Ala. Code § 11-40-31 (requiring that all mortgagees of record receive notice that the property "is unsafe to the extent that it is a public nuisance"). The argument also does not address the stipulated fact that "Defendants demolished Plaintiff['s] structure prior to the city council approving the demolition." (Parties' Stipulation g.) These omissions cut against Defendants' contention that their compliance with § 11-40-31 of the Alabama Code entitles them to summary judgment on the due process claims.

The court also has considered that Defendants sent the certified mailings to Plaintiff at the address on file with the revenue commissioner's office, in compliance with § 11-40-31. That address apparently was not up to date. The summary judgment record is silent as to whether the blame lies with the revenue commissioner

or Plaintiff for the incorrect address.[9]  But, even if Plaintiff is at fault for failing to update his address, *Flowers* makes clear that a property owner, who "fail[s] to comply with a statutory obligation to keep his address updated," does not "forfeit his right to a constitutionally sufficient notice."  547 U.S. at 232.  Hence, even though Defendants complied with the state statute by using Plaintiff's address on file in the revenue commissioner's officer to send Plaintiff notice, once Defendants learned that Plaintiff could not be reached at that address, the reason why the address is wrong is constitutionally irrelevant.  Relatedly, it might seem that the City should be able to assume that an absent owner, if that is the case here, "leaves his property in the hands of one who will inform him if his interest in jeopardy." *Id.* at 233.  But the commissioner made that argument in *Flowers*, and it was rejected.  The Court recognized that the property owner "should have been more diligent with respect to his property," but it still held the government responsible for providing constitutionally adequate notice of the impending tax sale. *See id.* at 234.

Defendants next contend that this lawsuit is an impermissible collateral attack on the City's "decision declaring his property a dangerous public nuisance."  (Doc.

---

[9] *Cf. Ellis v. City of Montgomery*, 460 F. Supp. 2d 1301, 1306 (M.D. Ala. 2006), in which the court found that, notwithstanding that the plaintiff had properly recorded his purchase of the subject property in the office of the probate judge, as required by Alabama statute, the Montgomery County revenue commissioner's files "could lag behind in reflecting a change in property ownership by as much as two years," and, thus, the City of Montgomery's reliance on the revenue commissioner's files to identify the property owner for purposes of providing notice under § 11-40-31 of an impending demolition was not constitutionally adequate under the Due Process Clause.

# 20, at 10.)  Citing § 11-40-32(b) of the Alabama Code, Defendants contend that, "if [Plaintiff] had an issue with the City's position that his property was an unsafe public nuisance and should be demolished, [he] was required to file an appeal in the appropriate circuit court within 10 days of that determination."  (Doc. # 20, at 10.) Although Defendants cite no authority for their argument, it sounds in failure to exhaust, but the argument is misplaced.

The Eighth Circuit has succinctly explained how exhaustion of state remedies fits within the procedural due process paradigm for claims involving the deprivation of property interests:

> "[A] litigant asserting a deprivation of a property right in violation of procedural due process must exhaust state remedies before such an allegation states a claim under § 1983." This requirement is distinct from exhaustion requirements in other contexts. Rather, this requirement is necessary for a procedural due process claim to be ripe for adjudication.

*Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009) (citations and alterations omitted).

Subsection (b) of § 11-40-32, which is the only subsection Defendants cite, gives affected parties ten days to appeal from an adverse decision of the governing municipality made at a *hearing*, but in this case a hearing never was held.  Subsection (b) is irrelevant in this case.[10]  To the extent that Defendants intended to invoke

---

[10] Defendants' other argument invoking subsection (b) is illogical for an additional reason. Defendants assert that, even if the December 17, 2016 letter to the mortgagee restarted the clock

subsection (a), which establishes a deadline of no more than 30 days for an affected party to petition the governing municipality for a hearing on its finding that "the building or structure is unsafe to the extent of becoming a public nuisance," § 11-40-32(a), the argument fares not better. The deadline in subsection (a) does not commence until the city gives the landowner "proper notice" of its public-nuisance decision. *See Harris v. City of Birmingham*, 89 So. 3d 159, 165 (Ala. Civ. App. 2011) ("Following *proper notice*, any party having an interest in the building to be demolished may petition the local governing body for a hearing, stating any objections that party may have to the finding that the building is an unsafe public nuisance." (emphasis added) (citing Ala. Code § 11-40-32(a)). Defendants have not shown that they gave "proper notice." They have not argued persuasively or cited any authority demonstrating that the certified-mail letters, which undisputedly were returned unclaimed, provided Plaintiff "proper notice" that the City was condemning his property as a public nuisance. *Id.* And the lack of factual development again precludes an informed analysis, this time of whether the October 14, 2015 posting of notice on Plaintiff's property was proper. That discussion need not be repeated here. Defendants strike out on their arguments that Plaintiff's failure to invoke the appeal remedies under § 11-40-32 entitles them to summary judgment.

---

for Plaintiff to appeal under § 11-40-32(b), Plaintiff did not file a timely appeal by January 10, 2017. This argument ignores that the City effectively extinguished any appeal right by razing Plaintiff's home prior to the expiration of § 11-40-32(b)'s ten-day appeal period.

Finally, contrary to Defendants' argument, the principal decision upon which they rely, *Harris v. City of Birmingham*, 89 So. 3d 159, 166 (Ala. Civ. App. 2011), is materially distinguishable. (Doc. # 20, at 4.) The *Harris* court examined whether the city complied with the notice provisions of § 11-40-31, where the plaintiff claimed that third parties, not him, had either signed or forged the certified mail receipt cards. *Id.* at 161–62. Unlike the undisputed facts in this case, the plaintiff in *Harris* did not contend that he never received the certified letters. *Id.* at 166–67 nn. 2, 3. But even more significant than that factual distinction, the *Harris* court did not address the constitutionality of § 11-40-31 under the Fourteenth Amendment's Due Process Clause. *See id.* at 166–67 nn. 2, 3 (noting that the plaintiff did not argue that he was denied due process because others signed for the letters or because he did not receive the letters); *id.* at 166 (holding that it lacked jurisdiction to consider the plaintiff's facial attack on the constitutionality of § 11-40-31). Hence, the *Harris* decision did not address whether the notice the defendants provided to the plaintiff prior to demolishing his home complied with the Fourteenth Amendment's Due Process Clause, and, therefore, does not control here. Accordingly, Defendants' motion for summary judgment is due to be denied.

## V. CONCLUSION

Defendants branded the structure on Plaintiff's property a public nuisance and demolished it. They contend that they gave Plaintiff constitutionally sufficient

notice prior to the demolition. But they cannot rely on the two notices they sent Plaintiff by certified mail because both letters were returned "undeliverable." *See Jones v. Flowers*, 547 U.S. 220, 225 (2006). They must rely solely on the notice they posted on the property, but the summary judgment facts are too lean to assess whether this posting was a reasonable step that provided Plaintiff all the notice he was due under the Fourteenth Amendment's Due Process Clause prior to Defendants' razing his property. Accordingly, it is ORDERED that Defendants' motion for summary judgment (Doc. # 20) is DENIED.

DONE this 14th day of March, 2019.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE